UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                          **REPORT**
                                          **and**

     v.                                **RECOMMENDATION**

RONNIE FUNDERBURK,                         **04-CR-189-A(F)-35**

                            Defendant.


APPEARANCES:              TERRANCE P. FLYNN
                         UNITED STATES ATTORNEY
                         Attorney for the Government
                         MARY CLARE KANE
                         ASSISTANT UNITED STATES ATTORNEY, of Counsel
                         Federal Centre
                         138 Delaware Avenue
                         Buffalo, New York  14202

                         LIPSITZ, GREEN, SCIME & CAMBRIA
                         Attorneys for Defendant
                         PAUL J. CAMBRIA, JR.,
                         MICHAEL P. STUERMER, and
                         MICHAEL S. DEAL, of Counsel
                         42 Delaware Avenue, Suite 300
                         Buffalo, New York  14202


## JURISDICTION

This case was referred to the undersigned by the Hon. Richard J. Arcara on

October 19, 2005 for all pretrial matters.  The matter is presently before the court on

Defendant's motion to suppress filed July 15, 2005.  (Docket Item No. 189).


## BACKGROUND

On July 29, 2004, Richard Mullen and six others were initially charged in a five

count indictment with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 843(b), 846

("the Conspiracy Count"), 848(a), and 18 U.S.C. § 2.  On August 2, 2004, Defendant

Funderburk ("Defendant" or "Funderburk") was charged in a separate complaint ("the

Complaint") with violations of 21 U.S.C. § 843 (b) ("§ 843(b)"), using a communication

facility to facilitate committing a drug felony. On August 3, 2004, approximately 34

individuals were arrested in connection with this conspiracy pursuant to a related

criminal complaint.

In a superseding indictment, filed January 20, 2005, 27 persons were added as

co-defendants under the Conspiracy Count.  (Docket Item No. 52).  In a Second

Superseding Indictment, filed on April 28, 2005, Defendant was added to the

Conspiracy Count.  (Docket Item No. 116).

In accordance with the amended scheduling order, Defendant filed his omnibus

motion on July 15, 2005 ("Defendant's Motion") (Docket Item No. 189).  An evidentiary

hearing on Defendant's motion was conducted before the undersigned on December

15, 2005 (Docket Item No. 284) and December 19, 2005 (Docket Item No. 288).

Defendant's Memorandum of Law in Support of Defendant's motion was filed on June 2,

2006 ("Defendant's Memorandum") (Docket Item No. 417); the Government's Response

to Defendant's motion was filed on June 26, 2004 ("Government's Response") (Docket

Item No. 434).  Defendant's Reply was filed on July 6, 2006 ("Defendant's Reply")

("Docket Item No. 438).  Oral argument was deemed unnecessary.

**FACTS[1]**

On August 3, 2004, at approximately 5:30 a.m., United States Drug Enforcement

Agency ("DEA") Group Supervisor Nancy Cote ("Agent Cote" or "Cote"), Special Agent

Alexander Yasevich ("Agent Yasevich" or "Yasevich"), and three Buffalo Police officers

arrived at Funderburk's residence to execute the warrant, issued on August 2, 2004, for

Funderburk's arrest pursuant to the Complaint.  TI 22-23; TII 4-5. [2]  Funderburk and his

wife responded to the agents' knocking at the front door and the officers' knocking at the

side door by exiting the house.  TI 23.  At that point, Agent Cote informed Funderburk

he was under arrest and handcuffed him.  *Id.*  One of the police officers asked

Funderburk if he had weapons in the house; Funderburk replied he did, and the officers

retrieved these weapons.  *Id.*  When Funderburk was told his arrest was based on

communications with co-Defendant Frederick Nolley, Funderburk's brother-in-law,

Funderburk yelled at his wife that he was in trouble because of her brother.  TI 64-65;

TII 48-49.

The agents placed Funderburk in the rear seat of Agent Cote's vehicle.  TI 24.

Yasevich was seated in the front passenger seat of the vehicle, which was driven by

Cote.  TI at 39, 24.  Agent Yasevich then read Funderburk his *Miranda* warnings from a

standard issue DEA Form 13A card at the beginning of the 10 to 15 minute drive from

Funderburk's residence to the local DEA office located in downtown Buffalo.  TI 24, 29,

33-34; TII 8-9.  Yasevich orally read Funderburk's rights from the DEA Form 13A in a

---

[1]  Taken from the pleadings and papers filed in this action.

[2] References to "TI __" are to the transcript of the hearing conducted before the undersigned on
December 15, 2005.  References to "TII __" are to the transcript of the hearing conducted December 19,
2005.

"normal conversational voice" facing forward, occasionally turning and looking at Funderburk, after reading each *Miranda* right to Funderburk, to ask whether Funderburk understood.  TI 34-35, 75-76.  According to Yasevich, Funderburk, though visibly upset over the arrest, responded by saying "yes" to each question, never indicating to Yasevich, who speaks with a slight Russian accent, that Funderburk did not understand each of Yasevich's statements and questions.  TI 34-35, 97.  Further, during the ride, Funderburk repeatedly indicated to the agents that Funderburk wished to make a statement, but was instructed by the agents to defer speaking until Funderburk arrived at the DEA office.  TI 34-37; TII 10-11, 14.  No questions were posed to Funderburk during the car trip to the DEA office.  TI 37.

At the DEA office, Funderburk was handcuffed by one hand to a chair in the interview room without Funderburk's objection.  TI 40-41.  Agent Yasevich testified that, for safety purposes, it was standard practice to handcuff a suspect while in custody.  TI 40-41.  At that point, Funderburk again informed the agents that he desired to make a statement, but was again told the agents first need to obtain Funderburk's "biographical/pedigree data" on DEA Form 202.  TII 9-10.  Funderburk was then asked if he wanted something to eat or drink, and Funderburk requested a bottled water which was provided to him.  TI 43; TII 19.

Upon completion of the DEA Form 202, Cote asked Funderburk if he wished to give a statement regarding the investigation, to which Funderburk replied "yes."  TII 14.  Cote gave Funderburk the option of writing the statement himself, but Funderburk preferred to dictate it to Cote.  TI 46-47, 93; TII 17.  Funderburk would "dictate verbatim" what he wanted the statement to say, also advising Agent Cote how to spell some

words.  TII 17.  Agent Cote wrote a paragraph at a time, after which Funderburk would look at the statement, read it over or have Agent Cote read back sentences, and make a minor changes.  TI 46-47. Funderburk proceeded to revise the written statement and initial his changes.  TI 46-47; TII 20-21.  Funderburk signed the statement and Yasevich witnessed the statement by cosigning it.  TI 46-47; TII 21.  It took approximately 45 minutes to an hour to obtain, edit and sign Funderburk's written statement.  TII 21. Funderburk never hesitated to respond to the agents' questions, nor did he request an attorney.  TII 21-22. Cote asked Funderburk more than once if he wanted an attorney present; Funderburk said he did not.  TI 41-42.  No threats or promises were made in taking Funderburk's statement, however, no *Miranda* warnings were repeated to Funderburk at this time.  TI 77, 81-82.  Other than Funderburk, Agents Cote and Yasevich were the only persons in the room when Funderburk provided the statement. TI 46.

Once this interview had concluded and while Funderburk was being fingerprinted, Agent Cote discussed Funderburk's statement with Special DEA Agent Dale Kasprzyk ("Agent Kasprzyk" or "Kasprzyk") who told Cote that Funderburk's statement was, in several important respects, at odds with facts Kasprzyk knew to be true, particularly Funderburk's denial of any recent contact between Funderburk and Frederick Nolley. TII 24.  Approximately 30-45 minutes after Funderburk's first statement was taken, Agents Kasprzyk and Cote spoke with Funderburk, who was then being held in a holding cell located within the DEA office, to confront him with the inconsistencies.  TII 26, 29-30.  Specifically, Agent Kasprzyk verbally contradicted Funderburk's assertion to Agent Cote that Funderburk had not seen Frederick Nolley in 20 years, stating to

Funderburk the DEA observed Funderburk meeting with Nolley in a local city park

approximately two months earlier.  TII 30.  Initially, Funderburk was unresponsive, but

eventually admitted to meeting Nolley in the park in June 2004, claiming to the agents

that he met Nolley, because Nolley wanted Funderburk "to run" Nolley's driver's license

to assure Nolley there was no problem with the license, which Funderburk did.  TII 32.

Funderburk also denied to the agents any knowledge that Nolley was an alleged drug-

dealer, as the agents maintained, but admitted knowing Nolley had been shot on two

prior occasions.  TII 33.  The conversation between Funderburk and the agents lasted

between 10 and 15 minutes.  TII 34.

## DISCUSSION

**A.     Probable Cause to Arrest**

Funderburk urges all of the statements at the time of and subsequent to his

arrest must be suppressed because his arrest was without probable cause.

Defendant's Memorandum at 4-8.  At the outset, the Government argues that

Funderburk's motion to suppress based on lack of probable cause is untimely because

Funderburk failed to specifically raise this contention in his motion papers, as required

by Fed.R.Crim.P. 12(e).  Government's Response at 8.  Perusal of Funderburk's motion

papers reveals Funderburk did, in fact, fail to raise the argument that Agent Kasprzyk's

affidavit, in support of the Complaint, did not establish probable cause for Funderburk's

arrest and that suppression of Funderburk's statement should therefore be suppressed

based on the fruit of the poisonous tree doctrine.  (Doc. No. 189 at 3).  However, as

Funderburk correctly contends, the court, in its discretion at the hearing held on

December 19, 2005 before the undersigned, invited defense counsel to "raise any issue . . . that the hearing and the pleadings support." TII 104. As such, the court finds Funderburk's argument that his arrest was without probable cause and that his subsequent incriminating statements made while in custody should be suppressed, is properly before the court.

Funderburk specifically contends that the four intercepted phone calls, described in Kasprzyk's affidavit in support of the Complaint, do not provide probable cause for Funderburk's arrest for violation of § 843(b) in that (1) the conversation between Defendant Richard Mullen and Frederick Nolley on June 3, 2004 in which Nolley attempted to convince Mullen, the leader of the alleged narcotics ring, that Funderburk will not hinder their narcotics distribution activities, is insufficient to suggest any inference of Funderburk's criminality; (2) the telephone call, also referenced in Kasprzyk's affidavit, between someone known as "Moo" and Nolley regarding when cocaine would be available from Nolley fails to connect Funderburk to Nolley's narcotics activity; and (3) the apparent purpose of the two telephone calls between Nolley and Funderburk on July 21, 2004 was to innocently inquire of Funderburk how Nolley should assure, in the event Nolley was stopped while driving by local police, that Nolley's driver's license was valid, and how, as an African-American driver, to avoid unwanted police interference while driving. Defendant's Memorandum at 4-6. Funderburk further contends that nothing in Kasprzyk's affidavit directly demonstrates Funderburk's knowledge that Nolley was a drug dealer showing that Funderburk's actions were innocent in nature. *Id.* at 6. Finally, Funderburk asserts the "good faith exception" to the Exclusionary Rule should not apply in this case because, "the application [for the

warrant] is so lacking in indicia of probable cause as to render reliance upon it unreasonable." *Id.* at 3.

In opposition, the Government contends there was adequate probable cause to support the Complaint and arrest warrant for Funderburk and therefore Funderburk's statement could not be the result of any initial illegality, a prerequisite to application of the fruit of the poisonous tree doctrine.  Government's Response at 8-12.  Specifically, the Government argues (1) the intercepted conversations between Nolley and Funderburk, in which Funderburk advised Nolley how to operate Nolley's vehicle to avoid attention by law enforcement, makes direct reference to an earlier car stop of another local drug trafficker and the trafficker's loss of $1.5 million of cocaine; (2) Funderburk's intercepted comment to Nolley that "I don't know if you know that dude" implies fairly Funderburk was aware that, like the "dude" who lost the cocaine as referred to by Funderburk, Nolley also was a drug dealer; (3) based on Agent Kasprzyk's training, it was reasonable for Kasprzyk, the affiant, to believe Funderburk, as an experienced  police officer and possessed of knowledge of local drug trafficking activity, was attempting to coach Nolley on how to successfully "mule" drugs in the city; and (4) the "good faith" exception to the Exclusionary Rule applies to both arrest and search warrants, and such exception supersedes the fruit of the poisonous tree doctrine, upon which Funderburk relies.  Government's Response at 8-12.

First, there is no merit to Funderburk's contention that his arrest, based on the Complaint and supporting affidavit of Agent Kasprzyk, lacked probable cause.  The Fourth Amendment protects against unreasonable searches and seizures and requires probable cause to the issuance of warrants, including an arrest warrant.  *Groh v.*

*Ramirez,* 540 U.S. 551, 557 (2004).  Generally, probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested."  *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1983) (internal citations omitted).

Here, Funderburk's arrest was amply supported by probable cause established in the affidavit in support of the Complaint upon which Funderburk's arrest warrant was based.  Although it is arguable that, standing alone, the phone calls between Nolley and Mullen on June 3, 2004 and Nolley and "Moo" on July 21, 2004 establishing Nolley's status as an active narcotics trafficker, do not demonstrate probable cause for Funderburk's arrest warrant, taken together with the two intercepted phone calls between Funderburk and Nolley on July 21, 2004, probable cause to believe Funderburk was using a telephone to facilitate such trafficking was manifestly presented.  For example, in his conversation advising Nolley regarding how to drive so as to avoid a traffic stop by police, Funderburk refers to the arrest of a high profile drug dealer who had been recently stopped by local police.  This reference reasonably suggests an awareness by Funderburk that Nolley's questions to him were for the purpose of assisting Nolley in safeguarding Nolley's drug trafficking activities, and not, as Funderburk contends, solely to seek innocent advice to Nolley on how best to avoid being stopped improperly, even if, by local police because of Nolley's race.  Further, the court finds that by advising Nolley how to reduce the risk of attracting police attention while operating his car strongly implies Funderburk was attempting to use his

experience and knowledge as a law enforcement "insider" to instruct Nolley on how to successfully "mule" drugs, as the Government contends.  Government's Response at 10.

If Funderburk's actual purpose was merely to advise Nolley on how African-American males can operate a vehicle without being unfairly stopped by police, common sense dictates Funderburk would have had no need to refer to a known narcotics trafficker who police had previously stopped (perhaps improperly) but were ultimately justified in arresting for narcotics trafficking.  In the context of all the facts presented in Agent Kaspryzk's affidavit, it stretches credulity to conclude otherwise, as Funderburk urges.  Moreover, the court finds Nolley's telephone request to Funderburk that Funderburk run a law enforcement records check on Nolley's license to determine its current validity as inconsistent with any innocent purpose.  Significantly, Funderburk admits this request was made in an attempt to avoid "intrusive police conduct." Defendant's Memorandum at 5-6.  However, if Nolley, who may be charged with awareness as to the status of his driver's license, had a valid license, Nolley would reasonably have had no need to verify such fact through Funderburk, a police officer. Nolley's peculiar concern with a potential traffic stop based on a license check taken together with Funderburk's apparent awareness of Nolley's narcotics activity also demonstrates probable cause to believe Funderburk was attempting to facilitate such narcotics activity.  As such, the court finds the intercepted statements made by Funderburk to Nolley reasonably support that Funderburk had knowledge of Nolley's illegal drug-related activities, and that Funderburk was using the telephone in violation

of 21 U.S.C. § 843(b) as the Complaint alleged.[3]

Second, Funderburk's argument, that the "good faith exception" to the

Exclusionary Rule is inapplicable because its application to this case is "is so lacking in

indicia of probable cause as to render reliance upon it unreasonable," is equally without

merit.  Defendant's Memorandum at 3 (citing *United States v. Leon,* 468 U.S. 897, 923

(1984)).  Rather, as stated, Discussion, *supra,* at 9, because Funderburk's telephonic

advice to Nolley on July 21, 2004 supports a reasonable belief that Funderburk knew of

Nolley's drug activity, there was a substantial indicia of probable cause in the affidavit

supporting the Complaint and warrant.

Third, Funderburk's argument that his statement taken subsequent to his invalid

arrest, must be suppressed as "fruit of the poisonous tree" if the court finds the warrant

issued without probable cause, Defendant's Memorandum at 3-4, is moot as the court

has determined that probable cause supports the arrest warrant.  However, even

assuming that Funderburk was arrested without probable cause, Funderburk's assertion

that statements he made to DEA agents while in their custody must be suppressed

pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979) and *Brown v. Illinois*, 422 U.S.

---

[3] Funderburk states he requested surveillance reports from the Government "that may establish whether or not Nolley embarked [sic] the journey speculated with such factual certainty by Agent Kasprzyk in ¶ 41," Defendant's Memorandum at 8, and acknowledges that the Government's attorney indicated such reports do not exist. *Id.* Nevertheless, Funderburk requests production of any surveillance reports concerning Nolley from July 21, 2006 through August 2, 2006, which, based upon the time period when the phone calls at issue were intercepted, if they exist, according to Defendant would show a material omission of fact that defeats probable cause.  Defendant's Memorandum at 8.  AUSA Kane represented that no such reports exist.  The court has no reason to doubt this representation, and as such, Defendant's request for production is DENIED.  Defendant's request for a *Franks* hearing is similarly DENIED, as the record does not establish there were any "inaccuracies or omissions" in the affidavit or that Agent Kasprzyk's allegations were "deliberate falsehood[s]" or based on a "reckless disregard for the truth" which would require such a hearing.  *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied,* 526 U.S. 1028 (1999); *United States v. Ferguson,* 758 F.2d 843, 849 (2d Cir.), *cert. denied,* 474 U.S. 1032 (1985).

590 (1975) nevertheless fails.

In *Dunaway, supra,* the Supreme Court suppressed a defendant's confession based on the deliberate exploitation by police of the accused's unlawful detention. *Dunaway,* 442 U.S. at 218-19.  Here, even if Funderburk's arrest lacked probable cause, because Funderburk was given his *Miranda* warnings shortly before making his statement and repeatedly requested of the arresting agents he be allowed to make a statement, it cannot be found that but for the unlawful arrest, as Funderburk asserts, Funderburk would not have freely given the statements at issue.  This analysis applies equally to the subsequent statement given in response to the confrontation with Agent Kasprzyk that occurred within 45 minutes of Funderburk's statement to Agentss Cote and Yasevich.  Based on Funderburk's undisputed eagerness to cooperate, as demonstrated by the credible testimony of the agents in the record,[4] his custodial statements must be found to have resulted from Funderburk's spontaneous and desire to cooperate, rather than as the result of any actions by the agents to exploit on an unlawful arrest.

Funderburk's reliance on *Brown, supra,* is similarly misplaced.  In *Brown,* unlike the instant case, the defendant was arrested "without probable cause and without a warrant."  *Brown, supra,* at 591.  Although in *Brown* defendant had been given *Miranda* warnings, the Court held that *Miranda* warnings, standing alone, will not "purge the taint of an illegal arrest."  *Brown, supra,* at 605.  Other factors, which include  "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, . .

---

[4] Funderburk did not testfy.

12

. and, <u>particularly</u>, the purpose and flagrancy of the official misconduct" must be considered. *Brown,* 422 U.S. at 603-04 (internal citations omitted) (underlining added). "The voluntariness of the statement is a threshold requirement." *Id.*

Funderburk contends, pursuant to *Brown,* that his statements must be suppressed because there is a "causal connection between the illegality and the confession." Defendant's Memorandum at 4, 6-7. Specifically, Funderburk relies on the fact that his statements were given within two hours of his arrest, implying administration of *Miranda* warnings were insufficient to overcome the continuing taint flowing from his unlawful arrest in the taking of Funderburk's statement. Funderburk also argues that "the unreasonable reliance upon the warrant in light of the lack of probable cause to arrest speaks to the purpose and flagrancy of the official misconduct." Defendant's Memorandum at 7. The court disagrees.

Here, not only did Funderburk receive *Miranda* rights after he was arrested, but Funderburk repeatedly expressed to the agents his desire to cooperate and make a statement demonstrating that Funderburk's statement resulted primarily from such desire, an influence wholly independent of the arrest. TI 34-36; TII 14. Further, the agents' attempts to avoid misconduct are demonstrated by admonishing Funderburk not to make statements until their arrival at the DEA office and by their asking Funderburk several times whether he wanted an attorney present, which Funderburk refused, and the deference the agents showed Funderburk in allowing him to dictate and make changes to his statement. Additionally, the time period between Funderburk's arrest and confession was relatively short, approximately two hours. Finally, it is not credible that an experienced police officer like Funderburk could not resist the interrogation even

13

if he was aware he had been arrested illegally.  In addition to the *Miranda* warnings that were given to Funderburk upon his arrest, these factors serve to attenuate, if not completely negate, any influence upon Funderburk because of any possible illegality stemming from an illegal arrest.  Thus, even if Funderburk's arrest was without probable cause, Funderburk was given his *Miranda* warnings, was willing to provide a statement and cooperate, made such statement shortly after his arrest, was an experienced police officer familiar with his right to remain silent and to counsel, and was allowed to actively participate in making his statement.  These facts render *Brown* and *Dunaway* completely inapposite.

**B.      Waiver of Miranda Rights**

Funderburk also seeks to suppress his statements made to the agents after being read his *Miranda* warnings on the additional ground that he did not knowingly and voluntarily waive his *Miranda* rights.  Defendant's Memorandum at 8-11.  Specifically, Funderburk contends he was under extreme emotional distress when he purportedly waived his *Miranda* rights, and that these rights were read to him while traveling in Agent Cote's automobile to the DEA office in a manner which did not allow him to adequately hear them and make an adequate waiver.  Defendant's Memorandum at 9. In opposition, the Government contends that Funderburk understood fully the *Miranda* warnings read to him by Agent Yasevich in the car and, despite the fact that even if Funderburk may have been emotionally upset by his arrest, Funderburk was no more upset than the average person would be in the same situation.  Government's Response at 15.  The Government also relies on Funderburk's status as an

experienced police officer demonstrating Funderburk's contention, that he did not properly waive his *Miranda* rights, is spurious.  Government's Response at 15-16; *see also United States v. Gallo,* 2000 WL 852453 * 7 (D. Conn. 2000) (defendant's "training and experience as a police officer" demonstrated his familiarity with *Miranda* rights); *United States v. DiLorenzo,* 1995 WL 366377 * 5 (S.D.N.Y. 1995) (defendant's 9-year experience as a police officer made him "uniquely familiar" with *Miranda* rights).

It is basic that an accused may waive his *Miranda* rights.  *Edwards v. Arizona,* 451 U.S. 477, 482 (1981); *Miranda v. Arizona,* 384 U.S. 436, 444 (1966); *Terry v. LeFevre,* 862 F.2d 409, 412 (2d Cir. 1988).   In making this determination, the court considers whether the purported waiver was voluntary and constituted "a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case including the background, experience and conduct of the accused." (internal quotation omitted).  *Edwards,* 451 U.S. at 482 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).  "Thus, the determination whether statements obtained during custodial interrogation are admissible is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel."  *Fare v. Michael C.,* 442 U.S. 707, 724-25 (1979).

Considering the totality of the circumstances presented on this record, the court finds Funderburk knowingly and voluntarily waived his *Miranda* rights.  Initially, the court observes it is undisputed that Funderburk had been a member of the Buffalo Police Department for at least six years prior to his arrest.  *See* Government's Response at 15.

15

As such, Funderburk's particular background and experience as a police officer demonstrates his familiarity with investigative situations where a suspect must be read *Miranda* rights and what those *Miranda* rights entail.  Further, the court finds that, as discussed, Discussion, *supra,* at 3-4, even if Agent Yasevich was facing forward and in the front seat of Cote's car when, as the agent testified, he read each *Miranda* right to Funderburk from the standard DEA Form 13A, Funderburk never indicated to Yasevich that he could not hear or understand Yasevich, never asked Yasevich to speak louder or enunciate more clearly, and responded "yes" each time Yasevich turned in his seat to ask Funderburk if Funderburk understood the particular right that Yasevich just read to Funderburk.  Thus, it is immaterial that Yasevich spoke with a slight, albeit, noticeable, foreign accent given that Funderburk never indicated to Yasevich he had difficulty understanding Yasevich.[5, 6, 7]

Funderburk's contention that he did not voluntarily waive his *Miranda* rights because he was then suffering emotional distress following his arrest is equally unavailing.  Although Agent Yasevich testified that Funderburk was "visibly upset" during the car ride, the court finds it is not uncommon that an arrested person, even a police officer, may well have been emotionally distraught under such circumstances. However, although Funderburk appeared to the agents to have been nervous, Funderburk did not experience any apparent respiratory difficulty, and did not suffer any

---

[5] Funderburk does not contend that the DEA Form 13A inadequately states the admonitions required by *Miranda*.

[6] Neither counsel nor the court had difficulty understanding Yasevich's testimony at the hearing.

[7] Funderburk did not testify at the hearing in support of his motion.

palpable emotional break-down.  TI 35; TII 18-19.  Further, Funderburk remained talkative during the ride from his home to the DEA office, so much so that the agents repeatedly needed to admonish Funderburk against making any incriminating statements until after arrival at the DEA office.  TI 35-37.  As the agents testified, Funderburk had persisted in expressing his desire to explain away the charges.  TI 37-38.  As such, there can be no plausible argument that Funderburk's asserted state of emotional upset substantially interfered with his capacity to make a valid waiver of his *Miranda* rights.  Significantly, Funderburk offered no testimony to support his assertions of emotional distress or an inability to sufficiently understand Yasevich's *Miranda* warnings.  Funderburk fails to point to any authority to support his claim that, under the circumstances presented, his waiver was involuntary because he was emotionally upset.

**C.    Admissibility of Second Statement**

Funderburk further contends that the statement he made during his confrontation with Agent Kasprzyk is inadmissible as it was not preceded by *Miranda* warnings and was involuntary.  Defendant's Memorandum at 11-14.  Specifically, Funderburk contends that (1) the conditions of this second interrogation were hostile, because Kasprzyk accused Funderburk of lying several times to Agent Cote and described Funderburk's assertion that Funderburk had not seen Nolley in 20 years as "bullshit," Defendant's Memorandum at 13 (citing TII 82, 93-94); (2) Kasprzyk's statement to Funderburk urging Funderburk to immediately cooperate in the investigation because it would be to Funderburk's advantage was misleading as "an accused in federal court

17

may cooperate after being represented by counsel and even derive a benefit at sentencing," Defendant's Memorandum at 13-14; (3) when Funderburk provided the incriminating second statement in response to Kasprzyk's accusation of lying, there was no evidence to suggest that Funderburk possessed any "knowledge of the rules regarding the benefits of cooperating with the government in federal court," Defendant's Memorandum at 12;  (4) the second interrogation was objectively coercive; and (5) the second statement was based on an interrogation independent of that conducted by Agent Cote and therefore required further administration of *Miranda* rights to Funderburk**.**  *Id.*

In support, Funderburk relies on *United States v. Anderson*, 929 F.2d 96 (2d Cir. 1991), where the Second Circuit found police coerced the suspect into confessing and suppressed the suspect's statement based on the police misrepresentation regarding the suspect's opportunity to cooperate.  Defendant's Memorandum at 11.  However, Funderburk's reliance on *Anderson* is misplaced for several reasons.  First, in *Anderson*, the agent repeatedly but falsely informed the suspect that, if he requested a lawyer, the suspect would be unable to later cooperate and thereby benefit himself, a circumstance which did not occur in the case at bar.  *Anderson, supra*, at 97.  Further, unlike the defendant in *Anderson*, given Funderburk's position as a law enforcement officer, Funderburk had the training and experience with the criminal justice system to know that Kasprzyk's urging him to cooperate was typical investigative importuning and, based on his law enforcement professional experience, Funderburk could not have been reasonably misled into a belief that he must give a statement or relinquish any future chance to cooperate.  Additionally, there is no evidence that Kasprzyk's

questioning of Funderburk was intended to trick or coerce Funderburk into making a statement, rather, it merely informed Funderburk that the agents knew Funderburk had lied about his relationship with Nolley, providing Funderburk with an immediate chance to rectify the misstatement, thus, according to Kasprzyk, improving Funderburk's chances of obtaining favorable consideration from the agents.

In contrast to the facts in *Anderson, supra*, Funderburk was merely advised by Kasprzyk it would be in Funderburk's best interest to cooperate at that time because Funderburk was going to court for formal proceedings and that the proceedings would interrupt the opportunity for early cooperation.  TII 82, 93-94.  Contrary to Funderburk's contention, Defendant's Memorandum at 12-14, the Second Circuit has held that law enforcement officials are not overbearing and a defendant's statement is not thereby rendered involuntary where a defendant has been informed, "without threats or promises," that it would be in the defendant's best interest to cooperate immediately "rather than exercise his right to remain silent."  *See United States v. Pomares,* 499 F.2d 1220, 1221-222 (2d Cir.), *cert. denied,* 419 U.S. 1032 (1974) (finding a confession to be voluntary even where "federal agents had gone beyond simply urging the defendant to cooperate and had promised that he would be released on bail if he confessed.") As the court in *Pomares,* stated "the agents were free to discuss with [defendant] the reasons why he should cooperate."  *Id*. at 1222.

Here, in obtaining Funderburk's second statement, the agents did not threaten or make false promises of leniency to Funderburk.  Rather, Agent Kasprzyk was merely quite explicit in informing Funderburk, the agents' opinion that Funderburk had not been completely forthcoming with them when he initially denied his prior contact with Nolley.

19

Thus, as in *Pomares*, *supra,* the agents in this case were free to advise Funderburk as to why he should cooperate fully at that point in the investigation.   Therefore, even if the agents suggested to Funderburk should then cooperate by being completely truthful, prior to making his initial appearance in court, the court finds the agent's urging does not constitute investigatory misconduct requiring suppression under *Anderson*.   Given these facts, and absent an explicit misrepresentation by either DEA agent as to any limits on Funderburk's opportunity to cooperate, Funderburk, unlike the accused in *Anderson*, could not have reasonably believed he was required to incriminate himself or be permanently precluded from obtaining future benefits by any later cooperation in the investigation.

Additionally, there is no merit in Funderburk's attack on his later questioning by Kaspryzk as being without a further administration of *Miranda* warnings.   It is conceded that Funderburk had been advised of his constitutional rights immediately prior to Agent Cote's first interrogation, and "Miranda and its progeny do not require the defendant to have his rights re-administered after each break in questioning."   *Plume v. Conway,* 2006 WL 1789134 * 5 (W.D.N.Y. 2006).   As the interval between Cote's and Kasprzyk's questioning of Funderburk was only 30-45 minutes, the court finds that, as with the defendant in *Plume,* Funderburk was in continuous custody and therefore re-administration of his *Miranda* rights prior to the second encounter with Agents Kasprzyk and Cote was not required.   *Id.*   Further, because Funderburk was an experienced Buffalo police officer, Funderburk was (i) well-familiar with law enforcement investigative techniques in questioning suspects, and (ii) was not subjected to any physical deprivations such as refusal of food or drink or use of toilet facilities, both factors point

away from any need to repeat the *Miranda* warnings prior to Agent Kasprzyk confronting Funderburk about his apparent untruths regarding his prior contact with Nolley.  Given that the second round of questioning related directly to the first, and without a lengthy break, Funderburk's contention that additional *Miranda* warnings were required, upon encountering Kasprzyk, is meritless.  Funderburk cites no authority to support this contention.  As discussed, Discussion, *supra,* at 19, the court finds Funderburk was in continuous custody  throughout the interrogation process, and therefore no specific re-administration of *Miranda* warnings before the interrogation by Agent Kasprzyk commenced was necessary.  *Plume, supra,* at * 5.  Based on the foregoing, the court finds Funderburk's statement, in response to Agent Kasprzyk's questioning made during the second phase of Funderburk's interrogation is therefore admissible.

The court therefore turns to Funderburk's contention that the conditions of the second interrogation were hostile and, as such*,* this fact demonstrates the involuntariness of Funderburk's second statement.  As stated, Agent Kasprzyk confronted Funderburk with Funderburk's assertion that he had not seen Nolley in 20 years, stating that was "pretty much bullshit," which, based on the intercepted conversations and surveillance of Funderburk and Nolley meeting in the city park, the agents had a good reason to believe was the case.  TII 82.

Under the Fifth Amendment, a confession "must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Brady v. United States,* 397 U.S. 742, 753 (1970) *(quoting Bram v. United States,* 168 U.S. 532, 542-43 (1897)); see also *Malloy v. Hogan,* 378 U.S. 1,7 (1964) (a person "must not

21

have been compelled to incriminate himself").   The test of voluntariness of a confession

is to be determined by viewing the totality of the circumstances and assessing whether

the conduct of "law enforcement officials was such as to overbear [the defendant's] will

to resist and bring about confessions not freely self-determined . . . ."   *Rogers v.*

*Richmond,* 365 U.S. 534, 544 (1961); *accord  United States v. Alvarado,* 882 F.2d 645,

649 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071 (1990); *United States v. Guarno,* 819

F.2d 28, 30 (2d Cir. 1987); *United States v. Ferrara,* 377 F.2d 16, 17 (2d Cir. 1967),

*cert. denied*, 389 U.S. 908 (1967).   The totality of the circumstances include

defendant's age and education, the whether the defendant was advised of his

constitutional rights, the length of the interview and the type of questioning, and the use

of physical deprivations.  *Schenckloth v. Bustamonte,* 412 U.S. 218, 226 (1973).

Additionally, the court should consider the conditions of the interrogation and the

conduct of law enforcement officials conducting the questioning and Funderburk's

experience with the criminal justice system.  *Anderson,* 929 F.2d at 99;  *Green v. Scully,*

850 F. 2d 894, 901-02 (2d Cir.), *cert. denied,* 488 U.S. 945 (1988).

In the instant case, the court finds neither the conditions of the second

interrogation by Kaspryzk and Cote nor the conduct of the agents in conducting the later

interrogation demonstrate Funderburk's admissions to be involuntary.  Specifically, the

court finds that Agent Kasprzyk's comments to Funderburk were not intended to trick,

coerce or cajole Funderburk, but, rather, straightforwardly to confront him with the

investigators' knowledge about his prior contacts with Nolley, and convey frankly to

Funderburk their awareness that Funderburk's initial denials on this important question

were significantly incomplete and inaccurate providing an immediate chance to

cooperate.

Funderburk further argues that the later interrogation was conducted in a small room, implying this fact should persuade the court of the second statement's involuntariness.  Defendant's Memorandum at 12.  However, "[t]he fact that the questioning took place in close quarters is not significant in determining whether [a defendant's] statements were voluntary."  *Anderson, supra,* at 99.  Based on the record, it is unlikely that Funderburk experienced any significant mental or physical distress that had conceivably overborne Funderburk's will during the second interrogation.  While his confrontation with Agent Kasprzyk may well have been somewhat unpleasant for Funderburk, given his recent *Miranda* admonitions, his previously expressed desire to cooperate, and his experience as a police officer with law enforcement investigative procedures, Funderburk cannot reasonably assert that his statements in responding to Agent Kasprzyk demand for candor and truthfulness resulted from oppressive law enforcement misconduct.  Thus, Funderburk's contention that the second interrogation was coercive because the conduct of the agents in conducting the interrogation, particularly Agent Kasprzyk, was "hostile," Defendant's Memorandum at 13-14, must be rejected.

Finally, Funderburk claims the second statement was involuntary because he lacked "knowledge of the rules regarding the benefits of cooperating with the government in federal court," Defendant's Memorandum at 12, suggesting that Funderburk's law enforcement background is irrelevant to whether his statements were voluntary in this federal prosecution, and that he was thus unfairly misled by Kasprzyk as to the need to immediately 'come clean' about his prior contact with Nolley.  *Id.* at 12-

14.  Although Funderburk again relies on *Anderson, supra,* the court finds *Anderson* is inapposite on this point for several reasons.

First, although in *Anderson* the accused had been previously arrested, no evidence supported a finding that such prior experience obviated the need for *Miranda* warnings or completely truthful advice relative to future cooperation.  *Anderson, supra,* at 99.  Here, Funderburk indisputably received his *Miranda* warnings almost immediately upon coming into custody, and Funderburk points to no affirmative misrepresentation by the agents as to the scope of Funderburk's opportunity to cooperate with the DEA in return for possible plea bargaining benefits.  In contrast with the defendant in *Anderson*, Funderburk, as an experienced police officer, did not labor under limitations regarding the nature of *Miranda's* protections or, more particularly, the chance for future cooperation by an accused.  Moreover, Funderburk's suggestion that his lack of specific experience in connection with a federal criminal investigations is somehow relevant to the issue of voluntariness, Defendant's Memorandum at 12, constitutes a theory in search of its facts.  Funderburk fails to point to any substantive differences between New York state and federal criminal law or procedure in regard to a narcotics investigation that could conceivably support finding there is any material variance between the two systems such that Funderburk was prejudiced by Agent Kasprzyk's urging that he promptly cooperate.

**CONCLUSION**

Based on the foregoing, Defendant's motions to suppress contained in Defendant's omnibus motion (Doc. No. 189) and as raised at the proceedings on

December 15, 2005 (Doc. No. 284) and December 19, 2005 (Doc. No. 288), should be

DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       September 15, 2006
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        September 15, 2006
             Buffalo, New York